# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSICA GALLANT, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-357-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff, who alleges that she is disabled by personality disorder and bipolar disorder, could return to past relevant work. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that since July 1, 2005, the plaintiff's amended alleged onset date, she had engaged in substantial gainful activity ("SGA") throughout 2006, although her work in 2007 was slightly less than SGA level, Finding 2, Record at 17; that she had the residual functional capacity ("RFC") to engage in cyclic, repetitive work that did not require extended focus on a task and was able to interact with co-workers, supervisors, and the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

general public, Finding 5, *id*. at 19; that she was capable of performing past relevant work as a laundry worker and a bartender, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 21; and that she, therefore, had not been under a disability, as defined in the Social Security Act, from July 1, 2005, through the date of the decision, Finding 7, *id*.[2] The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's itemized statement of errors also implicates Step 1 of the sequential process, at which stage the plaintiff bears the burden of proving that she did not engage in SGA

---

[2] The plaintiff was insured for purposes of SSD benefits through December 31, 2011, *see* Finding 1, Record at 17, well past the date of decision.

during the period in question. *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995), *called into doubt on other grounds, Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001). Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "[W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." *Id*. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b). If a claimant is able to work at SGA level, the commissioner will find that he or she is not disabled. 20 C.F.R. §§ 404.1571, 416.971.

## I. Discussion

The plaintiff complains that the administrative law judge erred in (i) omitting to adopt, and relay to a vocational expert present at her hearing, a restriction against working with the general public found by Disability Determination Services ("DDS") nonexamining consultant Peter G. Allen, Ph.D., that precluded performance of either the laundry worker or bartender jobs, (ii) finding her ineligible for disability benefits through December 31, 2006, on the basis of combined earnings for that year although two of the three jobs she performed were at below SGA level and the third constituted an unsuccessful work attempt, (iii) deeming the laundry worker and bartender jobs "past relevant work" when the former was an unsuccessful work attempt and the latter was performed at below SGA level, and (iv) mischaracterizing the nature of the laundry worker job. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 11) at 3-7. I find no reversible error.[3]

---

[3] The plaintiff's counsel also contended, for the first time at oral argument, that the bartender job could and should be analyzed as a so-called "trial work attempt" and that the administrative law judge erred in failing to adopt a restriction by Dr. Allen to simple work, which counsel argued undermined the finding that she was capable of
*(continued on next page)*

### A. Restriction Against Working With Public

The record contains only one expert assessment of the plaintiff's mental RFC, that of Dr. Allen, dated May 17, 2006. *See* Record at 786.[4] Dr. Allen found that the plaintiff could understand and remember at least simple tasks for a normal work period, had variable concentration, but adequate for routine work for a normal workday/week, could interact appropriately with a small group of co-workers and supervisors, but "best if no work with [the] general public[,]" and could adapt to minor changes at work. *See id.*

The administrative law judge declined to adopt Dr. Allen's restrictions on work with the general public, reasoning: "This assessment was made before the [plaintiff] began working, quite successfully, as a bartender. The [plaintiff's] successful working with the general public for at least 18 months demonstrates that Dr. Allen's assessment was more restrictive than necessary." *Id.* at 20.

The plaintiff argues that, as a layperson, the administrative law judge could not properly substitute his judgment for that of an expert in the matter of determination of RFC. *See* Statement of Errors at 3-4. As a general proposition, that is true; however, an administrative law judge is not precluded from making common-sense judgments. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on

---

performing either the bartender or laundry worker jobs, both of which are semi-skilled. These points were raised too late and, hence, are deemed waived. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

[4] A second DDS nonexamining consultant, David R. Houston, Ph.D., deemed the plaintiff's mental impairments non-severe as of October 6, 2003, and, hence, made no assessment of her mental RFC. *See* Record at 539.

medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record").

In this case, the administrative law judge supportably found, on the basis of a common-sense judgment, that Dr. Allen's limitations were overly restrictive. The record bears out that the plaintiff worked successfully part-time as a bartender at a Veterans of Foreign Wars of the U.S. ("VFW") post from the final week in June 2006 to March 2008. *See* Record at 91-92, 910. Bartending necessarily entails interaction with the general public. *See, e.g., id*. at 928. The plaintiff left the VFW job because she was moving. *See id*. at 910. She had no issues with anyone there. *See id*. When asked at hearing whether the "VFW went pretty well[,]" she responded: "Yeah, the VFW went good." *Id*. at 924. What is more, the lounge manager for the VFW post for which she worked wrote: "Since employing [the plaintiff], July 1, 2006 her record with us has been exceptional, attendance, loyalty, punctual[ity], the performance of her duties has been above reproach." *Id*. at 92. The administrative law judge's finding that the plaintiff had no restriction on working with the general public was both permissible and supported by substantial evidence.

In passing, the plaintiff further faults the administrative law judge for omitting to adopt, and relay to the vocational expert, Dr. Allen's restrictions to working with small groups of co-workers and supervisors and to adapting only to minor changes. *See* Statement of Errors at 4. However, she does not explain, and it is not otherwise apparent, how these restrictions would have had any bearing on her capacity to perform the jobs in question. Any error in failing to adopt them or convey them to the vocational expert accordingly is harmless.

5

## B. Finding of SGA Work in 2006

The plaintiff next faults the administrative law judge for determining, on the basis of her combined earnings of $11,379.04 in 2006, that she worked at SGA level and hence was not eligible for benefits in that year. *See id.* at 4-6.

A claimant's average monthly earnings indicate that she engaged in SGA if they exceed a set amount in a given calendar year. *See* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). For 2006, that amount was $860 per month. *See* Social Security Administration Program Operation Manual System ("POMS") § DI 10501.015(B) ("Policy – Table 2 – Nonblind Individuals Only").

The administrative law judge apparently calculated the plaintiff's average monthly earnings for 2006 by dividing her combined income from three separate jobs by 12, yielding $948.25. *See* Record at 17 ("Her combined earnings in 2006 were $11,379.04, which is in excess of the substantial gainful activity level."). That approach was incorrect. He should have analyzed average monthly earnings for *each* job for the months during which the plaintiff held it, combining her earnings only for the months, if any, during which her earnings from one job fell below SGA level and she had earnings from another job or jobs. *See* POMS § DI 10505.015(D)(3). Nonetheless, while the administrative law judge employed the wrong computational methodology, he arrived at the correct result, rendering the error harmless.

The plaintiff worked as a laundry worker at Pratt Abbott from February 27, 2006, through June 15, 2006, earning a total of $4,266. *See* Record at 73. Her average monthly earnings for the four months worked were $1,066.50, well above SGA level. The plaintiff does not contest that her earnings for this job exceeded that level, but rather argues that the administrative law judge erroneously rejected her contention that the job constituted an unsuccessful work attempt

6

and, on that basis, could not count as SGA. *See* Statement of Errors at 4-5; *see also, e.g.*, Social Security Ruling 05-02, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009) ("SSR 05-02"), at 312 (an unsuccessful work attempt is not considered SGA). Her argument is without merit.

To constitute an unsuccessful work attempt, a job that has lasted more than three months "must have ended or have been reduced to the non-SGA level within 6 months due to [a claimant's] impairment or to the removal of special conditions . . . related to [her] impairment that are essential to [her] further performance of work[.]" SSR 05-02 at 313. In addition, a claimant must have "had frequent absences from [her] work due to [her] impairment[,]" her "work must have been unsatisfactory due to [her] impairment[,]" her "work must have been done during a period of temporary remission of [her] impairment[,]" *or* her "work must have been done under special conditions." *Id*.

An unsuccessful work attempt must be both preceded and followed by a "significant break in the continuity of [a claimant's] work[.]" *Id*. "Such an interruption would occur when, because of [a claimant's] impairment or the removal of special conditions related to [her] impairment that are essential to [her] further performance of the work, the work was discontinued or reduced (or limited) to the non-SGA level." *Id*. Work is considered to be "discontinued" if a claimant was "out of work for at least 30 consecutive days" or was "forced to change to another type of work or another employer." *Id*.

While not expressly addressing the issue of whether there had been an unsuccessful work attempt, the administrative law judge here implicitly did so when he stated: "There was not a 30 day break in the [plaintiff's] work activity, and there is no evidence that the [plaintiff] required any subsidy or had any impairment related work expenses." Record at 17.

The administrative law judge correctly found that a period of less than 30 days elapsed between the plaintiff's departure from the Pratt Abbott job on June 15, 2006, and her commencement of work as a bartender at the VFW during the final week of June 2006. *See* Record at 73, 91. The plaintiff argues, however, that she was forced to change to another type of work or another employer when she left Pratt Abbott. *See* Statement of Errors at 5. She points to no support in the record for this proposition, *see id.*, and I find none. To the contrary, she testified that she chose to depart from the job because she hated it, and that she hated it because her supervisors expected too much work, for example, demanding that employees take over the jobs of those who had quit or been fired. *See* Record at 912, 923-24.

Further, as the administrative law judge suggested, there is no evidence that the plaintiff's departure from the Pratt Abbott job was impairment-related. Instead, she testified that she quit because the supervisors were too demanding, and that others quit as well. *See id*. As counsel for the commissioner noted at oral argument, the plaintiff's own testimony describes workplace upheaval, not impairment-related difficulty.

Thus, despite the administrative law judge's error in average-earnings methodology, he correctly deemed the Pratt Abbott work SGA.

The same is true of the VFW bartending job. The plaintiff states that her earnings from that job averaged $836.57, below the presumptive SGA level of $860. *See* Statement of Errors at 6. Yet, to arrive at that figure, she divided her total 2006 earnings from that job, which she calculates as $5,856, *see id.*, by seven.[5] The record, however, indicates that she worked for the VFW for only one week in June 2006, earning $224. *See* Record at 91. Because her earnings for the partial month of work in June were significantly lower than her earnings from July to

---

[5] The record indicates that the plaintiff's earnings from the VFW job in 2006 totaled $5,868. *See* Record at 91. However, nothing turns on the $12 discrepancy.

8

December 2006, which ranged from $640 to $1,144, *see id.*, the partial month should not have been included in averaging her earnings for 2006. *See* POMS § DI 10505.015(C)(1) ("Determining whether . . . partial months should be included in the period to be averaged will depend on whether there was a significant change in either the earnings or the pattern of work activity as compared to the rest of the period of employment. . . . If it is determined that [partial months] do represent a significant change in the work pattern or earnings, do not include those months. . . . By not averaging partial work months with significantly lower earnings, our intent is to avoid artificially lowering the figure determined to be the average monthly earnings by including months which are not representative of the rest of the period of employment.").

When one divides by six the plaintiff's earnings for the six months from July 1, 2006, through December 31, 2006, totaling $5,644, *see* Record at 91, the result is $940.67, above the presumptive SGA level of $860.

### C. Finding That Jobs Constituted Past Relevant Work

The plaintiff next contends that the administrative law judge erred in characterizing both the laundry worker and bartender jobs as "past relevant work" because neither constituted SGA. *See* Statement of Errors at 6-7; *see also, e.g.*, 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) ("Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."). As noted above, the administrative law judge supportably deemed both jobs SGA.

### D. Mischaracterization of Pratt Abbott Job

The plaintiff finally posits that the Pratt Abbott job was erroneously classified because, in terming it a "laundry worker" job, the administrative law judge overlooked an aspect of the work that involved cashiering, tainting his finding that she retained the RFC to perform the

9

requirements of the job. *See* Statement of Errors at 7. She maintains that her job, as actually performed, was a "composite" job and had to be analyzed as such. *See id.*

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Social Security Ruling 82-61, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-61"), at 838. "Such situations will be evaluated according to the particular facts of each individual case." *Id.*

The plaintiff testified that, in performing the job of laundry worker, she not only bagged and handled clothing but also did cashiering, although the job entailed more clothes-handling than cashiering. *See* Record at 926-27. The vocational expert testified that the Pratt Abbott job corresponded to the job of laundry worker, DOT § 361.684-018, *see id.* at 926, and the administrative law judge found that the plaintiff was able to perform that job as it is generally performed in the national economy, *see id.* at 21. The job of laundry worker, as described in the DOT, entails no cashiering. *See* DOT § 361.684-018.

"A claimant is not disabled at step four if the claimant can perform [her] past relevant work either as the claimant actually performed it or as generally performed in the national economy." *Malusa v. Astrue*, No. CV 07-655-TUC-CKJ (CRP), 2009 WL 2707219, at *14 (D. Ariz. Aug. 25, 2009) (citations and internal quotation marks omitted). That is true of composite jobs, as well, except that *each* job, within a composite job, must be taken into consideration. *See, e.g.*, SSR 82-61 at 838 (composite jobs must be "evaluated according to the particular facts of each individual case"). An administrative law judge may not deem a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs. *See, e.g., Roberts v. Astrue*, No. 8:08-CV-120-T-17EAJ, 2009 WL 722550, at *3 (M.D. Fla. Mar. 18,

2009) ("In deciding whether claimant can perform [her] past relevant work, an ALJ may not separate a composite job into two jobs and fail to focus on all the demands of the composite job."); *see also, e.g., Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) ("Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.").

Assuming *arguendo* that the cashiering portion of the Pratt Abbot job was significant enough to render the job a "composite" job, the administrative law judge erred in splitting off the clothes-handling function and finding the plaintiff capable of performing only *that function* as it is generally performed in the national economy. *See, e.g., id*. Nonetheless, any error was harmless. The vocational expert testified that the plaintiff had past work history as a cashier, *see* Record at 926, that neither the cashier job nor the laundry worker job required the ability to learn, remember, and work with detailed instructions, and that both were repetitive, short-cycle jobs that did not require detailed follow-through or extended focus on a particular task, *see id*. at 926-28. Thus, in contrast to cases in which the bifurcation of a composite job has been held reversible error, there was substantial evidence that the plaintiff could perform the composite laundry worker/cashier job as both functions generally are performed in the national economy. *Compare, e.g., Roberts*, 2009 WL 722550, at *4 ("[T]he ALJ erroneously bifurcated Plaintiff's composite job into two jobs and inappropriately focused on the less demanding security duties in order to find Plaintiff capable of performing his past relevant work. Although Plaintiff could perform the light exertional duties associated with his maintenance/security guard job, Plaintiff was incapable of performing the more demanding maintenance duties of this job.").[6]

---

[6] At oral argument, the plaintiff's counsel contended that, because the laundry worker job was a composite job, the
*(continued on next page)*

11

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 20th day of June, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

administrative law judge was obliged to assess whether the plaintiff could return to that work as she actually performed it, not as it is generally performed in the national economy. He suggested that it was inappropriate to consider whether she could return to the separate cashiering job, as actually performed, because she did not perform it at SGA level. I find no indication in the caselaw that composite jobs may be analyzed only as a claimant actually performed them. The gravamen of the caselaw, as I understand it, is that an administrative law judge must analyze whether a claimant can perform *each* job within a composite job, whether as actually performed or as generally performed in the nationally economy. *See, e.g., Roberts*, 2009 WL 722550, at *4 (directing commissioner, on remand, to determine whether the claimant retained the RFC to perform his past relevant work, either as actually performed or as generally performed in the economy, and to determine whether his work was a composite job "and, if so, whether [the claimant] has the residual capacity to perform the exertional demands of all the tasks of the composite job"). For purposes of the question of whether the failure to separately consider the cashiering aspect of the laundry worker job is harmless error, it is immaterial whether the plaintiff performed the separate cashiering job at SGA. The vocational expert's testimony supports the finding that she was capable of performing the cashiering function of the laundry worker job, which, as noted above, was performed at SGA level.